UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| NICHOLAS A. GLADU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00274-DBH |
| | ) | |
| TROY ROSS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS OF
DEFENDANT TROY ROSS (ECF No. 16)**

In this action, Plaintiff Nicholas Gladu, an inmate at the Maine Correctional Center, alleges that he was assaulted by a corrections officer while he was assigned to the Maine State Prison. The matter is before the Court on the Motion to Dismiss of Defendant Troy Ross. (ECF No. 16.)

As explained below, following a review of the motion, and after consideration of the parties' written arguments, I recommend that the Court deny the motion.[1]

**Background**

The facts set forth herein are derived from Plaintiff's complaint, which facts are deemed true when evaluating Defendant's motion to dismiss.[2] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

Plaintiff is currently incarcerated at the Maine Correctional Center. At the time of the incident that is the subject of this action, Plaintiff was an inmate assigned to the Special Management Unit at the Maine State Prison. (Complaint ¶ 4.)

---

[1] The Court referred the motion for report and recommended decision.

[2] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

According to Plaintiff's submissions, on June 28, 2014, Defendant Christopher Gowen, a corrections officer, repeatedly and purposefully, with "immense force," slammed the steel hatch of the tray slot on Plaintiff's cell door into Plaintiff's hand, causing significant injury. (*Id.* ¶¶ 26 – 27, 36; Motion to Substitute Party, ECF No. 25 (substituting Defendant Gowen for the John Doe defendant named in the complaint); Order Granting Motion to Substitute, ECF No. 27.) Following the incident, Defendant Gowen "admitted to another officer that he wasn't familiar with the use of force policy at all and stated, 'I thought we were allowed to do that.'" (Complaint ¶ 30.) Defendant Gowen allegedly also told another officer that he "had not yet been trained in the Department's use of force policy and/or procedure." (Plaintiff's Response to Motion to Dismiss at 2, ECF No. 23.)

Defendant Troy Ross at all times relevant to Plaintiff's action was Deputy Warden of Security at the Maine State Prison and in that capacity, according to Plaintiff, was responsible for the training and supervision of all corrections officers at the Prison. (Complaint ¶ 5.)

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted." In its assessment of the motion, a court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)). To overcome the motion, a plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim at issue. *Id.*

**Discussion**

Through his motion to dismiss, Defendant Ross contends that dismissal is appropriate because Plaintiff has failed to allege that Defendant was personally involved in the incident, and has failed to allege that Defendant was aware that Defendant Gowen would engage in the alleged conduct.  (Motion at 3.)  Defendant also asserts that Plaintiff's conclusory allegation that Defendant failed to train and supervise his subordinates lacks the necessary facts to state a claim.  (*Id*.)

In response to Defendant's motion, Plaintiff argues that "Defendant Ross failed to train [Defendant Gowen] in the Department's use of force protocol, thus setting in motion a series of acts by others, which he knew or reasonably should have known would cause others to inflict constitutional injury."  (Response at 4, ECF No. 23.)  Defendant Ross, however, maintains that Plaintiff's allegations describe nothing more than "a random assault" that Defendant Ross could not have anticipated.  (Reply at 3.)

Under the federal civil rights act, 42 U.S.C. § 1983, a supervisory official may be held liable for the behavior of a subordinate if (1) the behavior of the subordinate results in a constitutional violation, and (2) the supervisory official's action or inaction was affirmatively linked to the behavior.  *Estate of Bennett v. Wainwright*, 548 F.3d 155, 176 – 77 (1st Cir. 2008).  An affirmative link can be shown through supervisory encouragement, condonation or acquiescence, or by gross negligence amounting to deliberate indifference.  *Id.*  The applicable standard "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation."  *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (quoting *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1380 (1st Cir. 1995)).

In an action based on the failure to train, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1360 (2011).  The presence of a pattern, rather than an isolated instance, is ordinarily required because "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 – 408 (1997) (holding that solitary failure of sheriff to follow pre-hire employee screening procedure did not support the inference of deliberate indifference that is required to support a municipal liability claim).  As the Court noted in *Brown*, the "continued adherence to an approach that [policy-making officials] know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* at 407.  Without the pattern, ordinarily, the inference of culpability greater than negligence is strained. *Id.*

The Supreme Court, however, has not "foreclose[d] the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Id.* at 409.  A single incident could constitute a constitutional deprivation "in a narrow range of circumstances [in which] a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (citing *Canton v. Harris*, 489 U.S. 378 (1989)).

4

In *Canton*, in vacating a judgment against a municipal defendant where liability was based on a failure to train, the Supreme Court provided some guidance that is relevant to the assessment of Plaintiff's claim.  The Court noted that a complete failure to provide officers with training on the use of deadly force would present an "obvious" deliberate indifference scenario where "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons." *Id.* at 390 n.10.  In *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 28 (1st Cir. 2005), the First Circuit, citing *Canton*, observed, "[t]he Supreme Court has left open the possibility that a failure-to-train claim can succeed without showing a pattern of previous constitutional violations …. in a narrow range of circumstances, where "a violation of [a] federal right[ ]" is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (some internal quotation marks omitted) (quoting *Brown,* 520 U.S. at 409, and citing *Canton,* 489 U.S. at 390 & n. 10).  The law thus recognizes that where a responsible party fails to provide any training despite the knowledge that the party's subordinates will be confronted with situations that require training, that party can be liable for a resulting constitutional violation based on a deliberate indifference finding.

To establish deliberate indifference, Plaintiff must demonstrate that Defendant Ross "supervise[d], train[ed], or hire[d] a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.'" *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (quoting *Camilo–Robles v. Zapata,* 175 F.3d 41, 44 (1st Cir. 1999)).  Here, Plaintiff alleges that Defendant Ross oversees the Maine State Prison's training program, and failed to train Defendant Gowen.  Plaintiff, however, must do "more than assert a legal conclusion about the involvement of the administrative correctional defendants in the underlying constitutional violation." *Id.*  In particular, Plaintiff must allege facts

that would support a claim that Defendant Ross "overlooked a clear risk of future unlawful action by a lower-echelon actor over whom he had some degree of control." *Camilo–Robles*, 175 F.3d at 44.

In his complaint, Plaintiff asserts that a corrections officer whom Defendant Ross was responsible to train (Defendant Gowen) admitted that he was not familiar with the prison's use of force policy. While Plaintiff does not explicitly allege in his complaint a complete lack of training, at this stage of the proceedings, Plaintiff's complaint can reasonably be construed to assert such a claim.[3] Consistent with this view, in his response to the motion to dismiss, Plaintiff asserts that Defendant Gowen told another officer that he "had not yet been trained in the Department's use of force policy and/or procedure." (Plaintiff's Response to Motion to Dismiss at 2, ECF No. 23.)[4] The assignment of a completely untrained individual to supervise, monitor, or otherwise interact with inmates in the special management unit of a state prison can fairly be deemed to fall within the limited circumstances contemplated by the Supreme Court in *Canton* and the First Circuit in *Young*, where a pattern of constitutional deprivations is not a necessary predicate to liability based on a failure to train. Because Plaintiff's filings can be construed to assert that Defendant Ross failed to provide Defendant Gowen with any training, and that Defendant Gowen was assigned, without training, to a special management unit of the Maine State Prison, Plaintiff has stated a claim against Defendant Ross.

---

[3] Because Plaintiff is a pro se litigant, his complaint is subject to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

[4] This Court has construed complaints filed by pro se litigants in light of supplemental factual representations contained in responses to motions to dismiss. *E.g.*, *Wall v. Dion*, 257 F. Supp. 2d 316, 318 (D. Me. 2003) (citing *Gray v. Poole,* 275 F.3d 1113, 1115 (D.C. Cir. 2002)); *Bridges v. Ouellette*, No. 2:13-CV-00082-NT, 2013 WL 5755588, at *4 (D. Me. Oct. 23, 2013). *See also Smith v. Dart*, --- F.3d ---, No. 14-1169, 2015 WL 5656844, at *5 (7th Cir. Sept. 25, 2015) (finding that the district court should have considered letters filed by pro se party, which contained additional factual representations, when ruling on a motion to dismiss).

**Conclusion**

Based on the foregoing discussion, I recommend that the Court deny the Motion to Dismiss of Defendant Ross.  (ECF No. 16.)

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 29th day of October, 2015.